UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 0 4 2014

Vulcan Capital Corporation,

    Plaintiff,

—v—

Miller Energy Resources, Inc. and
PlainsCapital Bank,

    Defendants.

13-cv-8751 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff Vulcan Capital Corporation ("Vulcan") brings this action against Defendants Miller Energy Resources, Inc. ("Miller") and PlainsCapital Bank ("Plains"), seeking the recovery of certain Warrants issued by Miller and transferred to Plains. Before the Court are (1) Miller and Plains' motions to transfer the case to the Knoxville Division in the Eastern District of Tennessee, Dkt. Nos. 29, 37; (2) Plains' motion to transfer to the Dallas Division in the Northern District of Texas, Dkt. No. 37; and (3) Miller's motion to dismiss the complaint for failure to state a claim, Dkt. No. 32. For the reasons that follow, the motion to transfer to the Eastern District of Tennessee is denied, and the motion to transfer to the Northern District of Texas is granted. The Court does not reach the motion to dismiss.

### I. Background

    In or around September 2009, Plaintiff Vulcan Capital Corporation, a private equity firm, considered financing the acquisition of certain assets by Defendant Miller Energy Resources, an oil and gas exploration company. Boyd Aff. ¶ 4. As a result of these discussions, Miller's Board of Directors offered to employ Ford F. Graham—who is the president of Vulcan, *see* McCleskey

1

Decl. Ex. C—as their Vice-Chairman of the Board of Directors and President, Boyd Aff. ¶ 8; Second Amended Complaint ("SAC") ¶ 16. As part of his compensation, Graham was issued warrants to purchase 1,000,000 shares of Miller common stock at certain strike prices ("Warrants"). Boyd Aff. ¶ 10; SAC ¶ 16. At Graham's request, the Warrants were issued in Vulcan's name. Boyd Aff. ¶9; SAC ¶ 24. Each of the Warrants contained a "Governing Law" clause, which directed that its terms be construed under Tennessee law, and that "[a]ny suit, action, or proceeding with respect to [the] Warrant be brought in the state or federal courts located in Knox County in the State of Tennessee." Boyd Aff. Ex. B ¶ 7.

Meanwhile, PlainsCapital Bank, a Texas-based organization, had made a number of loans to Vulcan-affiliated companies. *See* SAC ¶¶ 14, 28; McCleskey Decl. ¶ 2. However, Vulcan itself "had no debt to Plains." SAC ¶ 31. At some point in 2010, it was discovered that collateral securing certain of these loans had been sold without Plains' consent. McCleskey Decl. ¶ 2. In response, Plains and Vulcan entered into the June 8, 2010, Pledge Agreement, pursuant to which Plains promised to continue lending to Vulcan-affiliated companies in exchange for the Warrants being pledged as collateral to secure those loans. *See* SAC ¶ 31; McCleskey Decl. ¶ 2; McCleskey Decl. Ex. 1 ("Pledge Agreement"). Following the alleged default on one of those loans in or around September 2010, the Warrants were transferred to and executed by Plains. *See* McCleskey Decl. ¶ 3; SAC ¶¶ 39-42.

Vulcan filed this action in the Southern District of New York on December 10, 2013. *See* Dkt. No. 1. Among other things, the SAC brings claims under New York and Texas law, alleging that the Pledge Agreement was the result of duress and fraud. SAC ¶¶ 45-92. The primary form of relief requested is the "rescission of the delivery of the Warrants, or

2

alternatively, . . . actual, consequential, and exemplary damages for the intentionally wrongful act or acts and omissions of Defendants." *Id.* at 26.

## II. Transfer to Knoxville

Each Warrant contains a forum-selection clause stating:

> Any suit, action, or proceeding with respect to this Warrant shall be brought in the state or federal courts located in Knox County in the State of Tennessee. The parties hereto hereby accept the exclusive jurisdiction and venue of those courts for the purpose of any such suit, action, or proceeding. The parties hereto irrevocably waive, to the fullest extent permitted by law, any objection that any of them may now or hereafter have to the laying of venue of any suit, action, or proceeding arising out of or relating to this Agreement or any judgment entered by any court in respect thereof in Knox County, Tennessee and hereby further irrevocably waive any claim that any suit, action or proceeding brought in Knox County, Tennessee, has been brought in an inconvenient forum.

Boyd Aff. Ex. B ¶ 7. Each Warrant also provides that it "shall be governed by and construed and enforced in accordance with, and all questions concerning the construction, validity, interpretation and performance . . . shall be governed by" Tennessee law. *Id.* Defendants Miller and Vulcan have moved to enforce this clause by transferring the case to the Knoxville Division of the Eastern District of Tennessee. For the reasons that follow, the motion is denied.

### A. Legal Standard

When assessing a motion to transfer on the basis of a forum-selection clause, a court must first determine whether the forum-selection clause is valid and enforceable. *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 581 n.5 (2013) (indicating that analysis of motion to transfer to enforce forum-selection clause "presupposes a contractually valid forum-selection clause"); *see also Midamines SPRL Ltd. v. KBC Bank NV*, No. 12-cv-8089 (RJS), 2014 WL 1116875, at *3 (S.D.N.Y. March 18, 2014) ("To determine whether a forum-selection clause is enforceable, the Court must consider, first, whether the forum-selection clause is valid and, second, whether public interest factors nevertheless counsel

against its enforcement."). The enforceability of forum-selection clauses is determined by federal law, while interpretive questions going to their "meaning and scope" "are resolved under the substantive law designated in an otherwise valid contractual choice-of-law clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217-18 (2d Cir. 2014).

A forum-selection clause pointing to a nonfederal forum is "presumptively enforceable" "[i]f [it] was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007) (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362-63 (2d Cir.1993)); *see also Martinez*, 740 F.3d at 217-18. This presumption of enforceability may be rebutted only by a "sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Phillips*, 494 F.3d at 384 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Because the Supreme Court has directed courts to "evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum," *Atl. Marine*, 134 S. Ct. at 580, the Court applies this test to determine the enforceability of the intra-federal forum selection clause sought to be enforced by Defendants. *But cf. Martinez*, 740 F.3d at 219 ("*Atlantic Marine* did not address the extent to which the 'interest of justice' test for invalidating a forum selection clause pointing to another federal district court resembles the test developed under *Bremen* for invalidating a forum selection clause pointing to a nonfederal forum."). Only if the Court concludes that a valid and enforceable forum-selection clause applies does it reach the question of transfer under 28 U.S.C. § 1404(a). *See Atl. Marine*, 134 S. Ct. at 579-80, 581 n.5 ("Our analysis presupposes a contractually valid forum-selection clause.").

4

In this context, the Court may rely upon the pleadings and affidavits submitted in connection with the motion. *See Martinez*, 740 F.3d at 216 (citing *Phillips*, 494 F.3d at 384). When a motion to transfer is resolved in this way, movants "bear the burden of establishing that there are no genuine issues of material fact about the factual bases for the motion," and the facts should be viewed in the light most favorable to the nonmoving party. *Midamines*, 2014 WL 1116875, at *2 n.5 (citing *Complaint of Am. Presidente Lines, Ltd.*, 890 F. Supp. 308, 314 (S.D.N.Y. 1995); *New Moon Shipping Co. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1996)).

### B. Discussion

As previously discussed, a forum-selection clause pointing to a nonfederal forum is presumed to be enforceable "[i]f [it] was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute." *Phillips*, 494 F.3d at 383 (citing *Roby*, 996 F.2d at 1362-63). It is not disputed that the language of the forum-selection clause sought to be enforced—which states that "[a]ny suit, action, or proceeding with respect to [the] Warrant *shall* be brought in the state or federal courts located in Knox County in the State of Tennessee," Boyd Aff. Ex. B ¶ 7 (emphasis added)—is sufficiently mandatory. However, Vulcan does dispute whether the forum-selection clause was reasonably communicated to it, *see* Pl. Opp. (Miller) 7 ("Vulcan was never made aware of the forum-selection clause"), and whether the clause covers the claims and parties involved in the dispute, *see* Pl. Opp. (Miller) 4 ("Vulcan did not contractually agree to a forum-selection clause.").

The Court first addresses whether the instant litigation is covered by the forum-selection clause contained in the Warrants. *See Phillips*, 494 F.3d at 383-84. Tennessee law governs interpretive questions regarding the scope and meaning of the contract. *See Martinez*, 740 F.3d

at 217-18; Boyd Aff. Ex. B ¶ 7. In Tennessee, a court assessing the applicability of a particular forum-selection clause "should look to the 'basis for which damages are sought'" to determine the real purpose or gravamen of an action. *Sevier Cnty. Bank v. Paymentech Merchant Servs. Inc.*, No. E2005-02420-COA-R3-CV, 2006 WL 2423547, at *5 (Tenn. Ct. App. Aug. 23, 2006) (citing *Tennsonita (Memphis), Inc. v. Cucos, Inc.*, 1991 WL 66993, at *2 (Tenn. Ct. App. May 2, 1991); *Bland v. Smith*, 277 S.W.2d 377 (Tenn. 1955)). In *Sevier* for example, the Tennessee Court of Appeals concluded that the action arose under the contract containing the forum-selection clause because "the gravamen of the [plaintiff's] complaint is a breach of the Agreement." *Id.*

Here, by contrast, the primary relief sought is "rescission of the delivery of the Warrants," which, as Defendants admit, occurred pursuant to the terms of *Pledge Agreement*, and *not* the Warrants. See SAC ¶¶ 31-36 (alleging that Vulcan "agreed to allow Plains to hold the Warrants" pursuant to the allegedly unenforceable Pledge Agreement, and that the Warrants were "surrendered" to Plains pursuant to the Pledge Agreement under duress); Plains Mem. (Transfer) 4 (alleging that Plains obtained the Warrants following Vulcan's default on certain promissory notes, pursuant to the terms of the Pledge Agreement); Miller Mem. 5-6 (same). Thus, the "gravamen" of Plaintiff's Complaint is the breach of the Pledge Agreement, which is a separate contract not alleged to have resulted from the Warrants. *Cf. Tennsonita*, 1991 WL 66993, at *3 (finding that subsequent oral contract arose under written contract containing forum-selection clause where it was Plaintiff's inability to perform the written contract that led to the oral contract). Indeed, the Pledge Agreement seems to have resulted from an entirely separate series of transactions between Vulcan and Plains, which are not alleged to have any relationship whatsoever with the Warrants. *See* SAC ¶¶ 28-31 (alleging that Vulcan associate

Ford Graham "has a long history of dealings with [Plains]" separate from his dealings with Miller); Plains Mem. (Transfer) 3-4 (alleging that "Plains had made loans to a number of [Vulcan's] affiliated companies" and entered the Pledge Agreement in response to Vulcan's having sold "certain collateral granted to Plains in connection with those loans"); Miller Mem. 3-4 (alleging that the "Pledge Agreement references certain promissory notes that were extended by Plains to Vulcan"). The Court accordingly concludes forum-selection clause in the Warrants does not apply to this action under Tennessee law, and therefore does not "cover the claims and parties involved in the dispute." *Phillips*, 494 F.3d at 383. Because movants are unable to establish this prerequisite to enforceability, the Court need not reach the parties' other arguments in order to conclude that the forum-selection clause is unenforceable. The motion to transfer to the Knoxville Division in the Eastern District of Tennessee is accordingly denied. *See Atl. Marine*, 134 S. Ct. at 579-80, 581 n.5 ("Our analysis presupposes a contractually valid forum-selection clause.").

### III. Transfer to Dallas

Having denied Defendants' motion to transfer this action to the Eastern District of Tennessee, the Court turns to Plains' alternative request that the action be transferred to the Dallas Division in the Northern District of Texas. *See* Plains Mem. (Transfer) 9. Outside of the forum-selection-clause context, a motion to transfer under § 1404(a) "involves two inquiries": (1) "whether the action could have been brought in the proposed transferee district," and (2) "whether transfer is warranted for the convenience of the parties and witnesses, in the interest of justice." *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 18 (S.D.N.Y. 2012) (citing 28 U.S.C. § 1404(a); *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *Herbert v. Elec. Arts, Inc.*, 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004)). It is the movant's

burden to show that transfer is appropriate by clear and convincing evidence. *See New York Marine*, 599 F.3d at 113-14.

Because it is undisputed that this case could have been brought in the Dallas Division in the Northern District of Texas, the Court focuses on the second question, whether transfer is appropriate under the circumstances. In making this determination, the Court may consider a number of factors, including:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*New York Marine*, 599 F.3d at 112 (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006)).

Having considered these factors, the Court concludes that the Northern District of Texas is the more appropriate forum for this action. A large majority of the witnesses likely to be called in this case reside in Texas. *See* Plains Mem. (Transfer) 11-13. Furthermore, Vulcan's connections to New York are tenuous at best—Vulcan appears to have never been registered to do business in New York, *see* O'Brien Decl. ¶ 3, and Ford Graham appears to be a resident of New Jersey, *see* O'Brien Decl. ¶ 4. Most significantly, Vulcan has not disputed any of these particular allegations, and further states "that it does not oppose [Plains'] request that the Court exercise its discretion . . . to transfer all of the action to the United States District Court, Northern District of Texas, and Dallas Division." Pl. Opp. (Transfer) 2. *Cf. Sanders v. Delta Air Lines, Inc.*, No. 13-cv-2800 (PKC), 2013 WL 5755248, at *2 (E.D.N.Y. Oct. 23, 2013) (discounting the significance of plaintiff's choice of forum where the motion to transfer was not opposed). Under these circumstances, the Court finds that transfer to that district is appropriate, and Plains' motion is granted.

IV. **Conclusion**

For the foregoing reasons, the motion to transfer to the Eastern District of Tennessee is denied, the motion to transfer to the Dallas Division in the Northern District of Texas is granted, and the Court declines to reach the motion to dismiss. The Clerk of Court is directed to transfer this action to the Northern District of Texas, Dallas Division, for all future proceedings.

SO ORDERED.

This resolves Dkt. Nos. 29 and 37.

Dated: September 4, 2014
New York, New York

_____
ALISON J. NATHAN
United States District Judge