UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VULCAN CAPITAL CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-3283-B |
| | § | |
| MILLER ENERGY RESOURCES, INC. | § | |
| and PLAINSCAPITAL BANK, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court are Defendants PlainsCapital Bank ("Plains") and Miller Energy Resources, Inc.'s ("Miller") respective Motions to Dismiss Plaintiff Vulcan Capital Corporation's ("VCC") Second Amended Complaint. Docs. 32; 66. For the reasons that follow, Plains' motion (doc. 32) is **GRANTED in part** and **DENIED in part**, and Miller's motion (doc. 66) is **GRANTED in its entirety.**

## I.

## BACKGROUND

This case arises out of a dispute over a pledge agreement (hereinafter, the "Pledge Agreement"), pursuant to which VCC agreed to transfer certain warrants to purchase stock (the "Warrants") in Miller Petroleum, Inc., now known as Miller Energy Resources, Inc., to Plains. Docs. 26, Second Amended Complaint ¶¶ 16–26, 31; 34-3, Pledge Agreement. According to the parties, the Warrants were to serve as replacement collateral for loans that Plains had previously made to

various companies affiliated with VCC (the "VCC-affiliated companies").[1] *Id.* These loans are reflected by a number of promissory notes that were executed by the respective VCC-affiliated companies (each individually, a "Note" and collectively, the "Notes") and guaranteed by VCC's President Ford F. Graham, Kevin C. Davis, and The Ford Graham Annuity Trust No. 1 (the "Trust") through a number of guaranty agreements (together with the Notes, the "Loan Documents"). *Id.*

In the event of a default under the Loan Documents, the Pledge Agreement authorized Plains to take various actions with respect to the Warrants, including executing or liquidating them. Doc. 34-3, Pledge Agreement ¶¶ 4–5. In return and as apparent consideration for the Warrants, it was understood by the parties that Plains would "continue the financial accommodations evidenced by each Note."[2] SAC ¶ 31; Pledge Agreement 1. According to VCC, Plains additionally agreed, in oral

---

[1] According to VCC, some of the collateral securing these loans had been sold to repay Plains and fund the VCC-affiliated companies. SAC ¶ 27.

[2] In full, this provision reads:
"WHEREAS, it is expressly understood (a) among Pledgor and Lender that the execution and delivery of this Agreement is a condition precedent to Lender's obligation to continue the financial accommodations evidence by each Note, (b) that the continued extension of financial accommodations to Debtor is a substantial benefit to Pledgor, and (c) the value of the consideration received and to be received by Pledgor is reasonably worth at least as much as the liability and obligation of Pledgor hereunder, and such liability and obligation may reasonably expected to benefit Pledgor directly or indirectly."
Pledge Agreement 1.
Unclear from the text of the provision, however, is whether the parties intended the provision to impose a new and independent obligation on Plains to continue its financial commitments to the VCC-affiliated companies under the Notes, or whether they merely intended the provision to memorialize the parties' mutual understanding that Plains would make good on its existing commitments under the Notes. If the former, it is not clear how this obligation differs from Plains' existing commitments under the Notes, unless one or more of the VCC-affiliated companies had defaulted on their Notes, and Plains was agreeing to honor its financial commitments under the Notes regardless of this fact. But if so, this is not made explicit by the language of the Pledge Agreement. If the latter, it is not clear how this promise constituted new consideration for VCC's transfer of the Warrants, in which case the contract may have been void for lack of consideration. This ambiguity has made it difficult for the Court to properly evaluate

representations made at or near the time of contracting, to continue to lend money to the VCC-affiliated companies and to provide VCC with access to capital. SAC ¶ 31.

Curiously and somewhat confusingly, however, VCC and Ford F. Graham signed the agreement with the understanding, allegedly reinforced by representations made to them by Plains' representatives, that Plains had no intention of actually executing the Warrants and merely needed VCC to sign the Pledge Agreement to avoid scrutiny by regulators. SAC ¶¶ 32, 34. In fact, VCC maintains that it would never have signed the Pledge Agreement absent these representations, because VCC was "aware that some of the notes on which some of the Vulcan companies were liable had been in default for months," meaning "PlainsCapital could have taken the stock or exercised the Warrants" the very day the Pledge Agreement was signed." SAC ¶ 32.[3]

Nevertheless, at the request of Plains, Miller transferred ownership of the Warrants to Plains, and on or about December 13, 2010, Plains executed the Warrants. SAC ¶¶ 34, 42. According to VCC, however, Plains failed to honor its financial commitments to the VCC-affiliated companies under the Notes as allegedly promised in the Pledge Agreement or to make good on its oral promises to provide future funding to VCC and the VCC-affiliated companies. SAC ¶ 35, 37–38.

As a result of Plains' actions and Miller's role in facilitating the execution of the Warrants, VCC filed this lawsuit in the United States District Court for the Southern District of New York on December 10, 2013, seeking to rescind the Pledge Agreement on the basis of duress and asserting

---

VCC's claims, especially that for breach of contract, and should be addressed if VCC elects to replead its claims in response to this order.

[3] Complicating matters further, VCC alleges the Pledge Agreement was ineffective to legally transfer ownership of the Warrants because the Warrants, along with VCC, were actually owned by the Trust and the Trustee refused to sign the necessary documents to surrender the Warrants. SAC ¶ 34. VCC alleges that it made Miller aware of this fact on several occasions. SAC ¶¶ 39–41.

alternative causes of action against Plains for breach of contract, constructive fraud in contract, fraud, and negligent misrepresentation, and against both Plains and Miller for breach of fiduciary duty, concert of action, and accounting.[4] Doc. 1, Complaint ¶¶ 45–84. VCC later amended its complaint to add causes of action against Plains for conversion and breach of the duty of good faith and fair dealing. SAC ¶¶ 85–92.

Plains filed its Motion to Dismiss VCC's Second Amended Complaint (the "Complaint") on March 28, 2014. Before the New York court could rule on this motion, however, Plains filed a motion to transfer the case to the Northern District of Texas, which the New York court granted on September 4, 2014. Docs. 37; 59. Thus, although Plain's Motion has been ripe for some time, it is only now the subject of this Court's review.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.

---

[4] In actuality, VCC attempts to assert causes of action for breach of contract and fraud against Plains under both New York and Texas law. *See* SAC ¶¶ 48–52, 55–62, 75–84. However, because such is not permitted by well-established choice-of-law principles, the Court treats VCC's Complaint as asserting single causes of action for breach of contract and for fraud against Plains. *Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 444 (1943). Whether these claims are governed by New York or Texas law is addressed later in this opinion.

2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

As stated above, VCC asserts numerous causes of action against Plains and Miller, all of which the defendants have moved to dismiss under Rule 12(b)(6) for failure to state a claim. The Court addresses the plausibility of each of these claims, in turn, below.

A.    *VCC's Duress Claim against Plains*

The Court first considers VCC's duress claim. In its Complaint, VCC claims that Plains "threatened to have Ford F. Graham arrested and criminally prosecuted and to [financially] 'ruin' and 'destroy' VCC, the Vulcan companies and Ford F. Graham if VCC did not sign the Pledge

Agreement. . . ." SAC ¶ 46. According to VCC, these threats "deprived Plaintiff of the ability to act in furtherance of its own interests or the ability to exercise free will" and thus constituted duress. *Id.* ¶ 47. As such, VCC argues that it is entitled to rescission of the Pledge Agreement.[5] *Id.*

Plains argues that VCC's duress claim fails for three reasons. First, Plains contends that VCC's failure to promptly disavow the Pledge Agreement precludes its claim as a matter of law. Doc. 33, Plains Br. 6. Second, Plains maintains that VCC has not alleged facts demonstrating that it was subject to legally cognizable duress, because "its allegations reflect that in mid-2010, VCC was faced with economic stresses that were in no way caused by Plains . . . ." *Id.* at 7. Third, Plains avers that even if VCC's economic stresses could be linked to Plains' actions, it is "simply not plausible" that the economic stresses VCC experienced "left it with no alternative but to enter into the Pledge Agreement." *Id.* at 8. The Court addresses each of these contentions, in turn, below.

Under New York law, a contract is voidable on the ground of duress when the party making the claim was forced to agree to it by means of a wrongful threat precluding the exercise of the party's free will. *See e.g.*, *United States v. Twenty Miljam-350 IED Jammers*, 669 F.3d 78, 89 (2d Cir. 2011); *In re Baby Boy O*, 733 N.Y.S.2d 768, 768 (App. Div. 2001); *Fred Ehrlich, P.C. v. Tullo*, 710 N.Y.S.2d 572, 573 (App. Div. 2000); *Geller v. Esikoff*, 560 N.Y.S.2d 328, 330 (App. Div. 1990). However, as Plains aptly observes, "[a] party seeking to avoid his contractual obligations on the grounds of . . .

---

[5] In its Response and Brief in Opposition to Plains' Motion to Dismiss, VCC also maintains that it has pleaded sufficient facts to entitle it to rescission based on lack of consideration and willful and material breach of contract. Doc. 46, Resp. Br. 12. However, because VCC did not formally assert such claims for relief in its Complaint, the Court declines to consider them at this time. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) (holding that a complaint cannot be amended by briefs in opposition to a motion to dismiss). If VCC wishes to pursue these claims, it may do so in an amended pleading.

duress shoulders a heavy burden." *Int'l Halliwell Mines, Ltd. v. Continental Copper & Steel Indus., Inc.*, 545 F.2d 105, 108 (2d Cir. 1976).

First, the plaintiff must prove that the alleged threats were "wrongful." *Twenty Miljam-350 IED Jammers*, 669 F.3d at 89. "A mere threat to do that which one has the right to do does not constitute duress." *Lyons v. Lyons*, 734 N.Y.S.2d 734, 737 (App. Div. 2001) (citations and quotations omitted). Similarly, a threat to exercise or enforce a legal right does not constitute duress. *See e.g., 767 Third Ave. LLC v. Orix Capital Markets, LLC*, 812 N.Y.S.2d 8 (App. Div. 2006), *leave to appeal denied*, 830 N.Y.S.2d 699 (2007); *Colello v. Colello*, 780 N.Y.S.2d 450 (App. Div. 2004).

Second, the plaintiff must prove that the alleged duress was "the result of defendant's conduct and not of plaintiff's own necessities." *U.S. West Fin. Serv., Inc. v. Tollman*, 786 F.Supp. 333, 340 (S.D.N.Y. 1992). "The press of financial circumstances not caused by the defendant will not be deemed duress." *Id.*

Third, the plaintiff must establish that the threat deprived plaintiff of its free will. *Twenty Miljam-350 IED Jammers*, 669 F.3d at 89. "A plaintiff's free will is precluded when (1) it would have suffered 'irreparable harm' had the wrongful threat been carried out, and (2) it was bereft of alternatives to signing the contract." *Interpharm, Inc. v. Wells Fargo Bank, N.A.*, No. 08CIV.11365RJH, 2010 WL 1257300, at *10 (S.D.N.Y. Mar. 31, 2010) *aff'd sub nom. Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136 (2d Cir. 2011).

Finally, even if a party establishes that it entered into a contract under duress, it must also show that it acted promptly to disavow or repudiate the contract or else it will be deemed to have ratified it. *Twenty Miljam-350 IED Jammers*, 669 F.3d at 89 (explaining that "[u]nder New York law a contract entered into under duress is generally considered not void, but merely voidable, . . . and

one who would repudiate a contract procured by duress *must act promptly or will be deemed to have elected to affirm it.*") (internal quotations omitted). Thus, New York courts have dismissed claims for duress, as a matter of law, where plaintiffs waited for more than a few months to repudiate the contract. *Id.* at 91; *see also Allen v. Riese Org., Inc.*, 965 N.Y.2d 437, 440 (App. Div. 2013) (rejecting duress claim as a matter of law and stating that three years' delay "cannot under any circumstance be considered prompt"); *Krantitz v. Strober Org., Inc.*, 580 N.Y.S.2d 350, 350 (App. Div. 1992) (affirming dismissal where plaintiffs waited one year to assert duress claim); *Bank Leumi Trust Co. v. D'Evori Int'l. Inc.*, 558 N.Y.2d 909, 914 (App. Div. 1990) (rejecting claim of duress where party delayed six months before raising the defense).

In this case, however, despite the inherent difficulty of voiding a contract on the basis of duress, the Court finds that VCC has pleaded sufficient facts to at least state a plausible claim for rescission based on duress. This is so because even if, as Plains argues, VCC's economic stresses were not caused by Plains' actions, the alleged fact that Plains threatened to have Graham arrested and criminally prosecuted if VCC did not enter into the Pledge Agreement is, if true and viewed in the light most favorable to VCC, alone sufficient to establish a prima facie case for duress under New York law. *See Kranitz v. Strober Org., Inc.*, 580 N.Y.S.2d 350, 350 (App. Div. 1992); *cf. Blumenfeld v. Harris*, 159 N.Y.S.2d 561 (App. Div. 1957), *judgment aff'd*, 3 N.Y.2d 905 (1957) (holding that "threats to invoke peacefully the processes of the law" cannot support an action for duress).

Moreover, although Plains accurately observes that VCC waited several years to bring suit to rescind the contract on the basis of Plains' allegedly coercive acts, the Court can reasonably infer from the facts alleged in VCC's Complaint that VCC acted promptly to repudiate the Pledge Agreement and thus cannot be deemed to have waived its claim for rescission. In particular, VCC

has alleged that it "told Plains that the surrender [of the Warrants] would not be effective without the signature and permission of the Trustee of the Trust that ultimately owned the Warrants" and that Plains' representatives acknowledged as much. SAC ¶ 34. Furthermore, VCC has alleged "that when presented with the [surrender] documentation later, the Trustee refused to sign the documents thus making [them] invalid." SAC ¶ 34. Accepting these statements as true, the Court may reasonably infer that although not explicitly required by the Pledge Agreement, the Trustee's signature was an implied condition precedent to VCC's surrender of the Warrants to Plains and, therefore, VCC's failure to obtain the Trustee's signature on the surrender documentation amounted to a repudiation of the Pledge Agreement on the part of VCC. *See Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 92 N.Y.2d 458, 463 (1998) (holding that a repudiation can either take the form of "a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach" or "a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach") (quoting Restatement (Second) of Contracts § 250). This position is reinforced by the alleged fact that both VCC and the Trustee later contacted Miller to indicate that Miller did not have the authority to convert the Warrants to Plains' ownership absent the Trustee's signature. SAC ¶¶ 39, 41.

Thus, although the Court harbors significant doubts as to whether the economic actions threatened by Plains were wrongful—e.g., threatening to "ruin VCC forever" by withholding funding to certain of the VCC-affiliated companies that were in default on their loans—whether Plains' threats were the cause of VCC's economic duress, and whether Plains' threats truly deprived VCC and Graham of the free will to refuse to enter into the Pledge Agreement, it lacks grounds for

dismissing VCC's claim at this early stage of the proceeding.

B.       *VCC's Breach of Contract Claim against Plains*

The Court next considers VCC's breach of contract claim, which VCC asserts in the alternative to its claim for rescission based on duress. In its Complaint, VCC alleges that Plains breached the Pledge Agreement by (1) exercising the Warrants when it had orally agreed not to, and (2) by failing to honor its obligation to continue the financial accommodations evidenced by each Note. SAC ¶ 51.

In moving to dismiss VCC's breach of contract claim, Plains argues that VCC's claim fails for several reasons. First, Plains contends that, to the extent VCC's claim is premised on Plains' purported oral promise not to execute the Warrants, it is barred by the Pledge Agreement's integration clause. Plains Br. 9–10. Second, Plains maintains that "even if VCC's allegations could be construed to refer to the written Pledge Agreement, VCC has failed to state a claim for breach of that contract . . . because the Pledge Agreement specifically authorize[d] Plains [to execute the Warrants] following a default under the Notes." *Id.* at 10. Third, Plains argues that VCC's allegation that Plains failed to continue to honor its financial commitments to the Vulcan Companies is insufficient to establish a claim, because "the only provision of the Pledge Agreement that VCC cites in support of this proposition is the 'whereas' clause stating that VCC's execution of that agreement was a 'condition precedent to [Plains'] obligation to continue the financial accommodations evidence by each Note'" and "VCC has conceded that it does not assert a claim for breach of the Notes." Doc. 50, Plains Reply Br. 5. Moreover, Plains argues that VCC "tacitly admits that Plains continued the 'financial accommodations' evidence by each Note by conceding in [its Complaint] that Plains did not exercise the Warrants until six months after the Pledge Agreement was signed, despite the VCC-

affiliated companies' admitted existing defaults under the Notes." *Id.*

The Court addresses each Plains' arguments for dismissal below. Before doing so, however, the Court must determine whether New York or Texas law governs VCC's breach of contract claim, because as previously discussed, VCC cannot maintain a cause of action under both. The Court's job is made easier in this regard by the fact that the Pledge Agreement contains a choice-of-law clause providing that the Agreement "shall be construed in accordance with the laws of [Texas]." Pledge Agreement 5. Under New York choice-of-law principles, which the court applies because this case was transferred from the Southern District of New York pursuant to 28 U.S.C. § 1404(a),[6] such a choice-of-law clause is enforceable so long as the chosen law bears a reasonable relationship to the parties or the transaction. *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 7 N.Y.3d 624, 629 (2006). This test is easily satisfied in this case because Plains has its principal place of business in Texas and thus the Court may safely assume that the Pledge Agreement was at least partially performed there. *Hal Roach Studios, Inc. v. Film Classics*, 156 F.2d 596, 598 (2d Cir. 1946). As such, the Court applies Texas law to VCC's breach of contract claim.

Turning, then, to the question of whether, to the extent it is based on Plains' alleged oral promise not to execute the Warrants, VCC's breach of contract claim is barred by the Pledge Agreement's integration clause, the Court agrees with Plains that VCC's claim is so barred. Under Texas law, a party is precluded from relying on prior or contemporaneous oral or written representations or understandings that contradict the terms of the written agreement to assert a claim for breach of that agreement. *Barker v. Roelke*, 105 S.W.3d 75, 83 (Tex. App.—Eastland 2003,

---

[6] *See Yelton v. PHI, Inc.*, 669 F.3d 577, 580 (5th Cir. 2012); doc. 50, Order Granting Plains' Motion to Transfer Venue.

pet. denied); *see also Smith v. Smith*, 794 S.W.2d 823, 827 (Tex. App.—Dallas 1990, no writ) ("[I]f the parties have integrated their agreement into a single written memorial, all prior negotiations and agreements with regard to the same subject matter are excluded from consideration whether they were oral or written."). This is especially true where, as here, the written agreement contains a valid merger or integration clause.[7] *Id.* Accordingly, VCC may not rely on Plains' alleged oral promise not to execute the Warrants to establish that Plains breached the Pledge Agreement.

In light of this conclusion, the Court further holds that VCC has not alleged sufficient facts to establish that Plains breached the Pledge Agreement. To state a cause of action for breach of contract under Texas law, a plaintiff must allege facts establishing: (1) that there was a valid contract; (2) plaintiff performed his or her obligations under the contract; (3) defendant breached the contract; and (4) plaintiff suffered damages as a result of defendant's breach. *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). In this case, VCC alleges that Plains breached the Pledge Agreement by executing the Warrants. SAC ¶ 51. As Plains correctly points out, however, the unambiguous terms of the Pledge Agreement specifically authorized Plains to execute the Warrants upon any default under the Loan Documents. *See* Pledge Agreement ¶¶ 1, 4–5. Furthermore, VCC admits that one or more of the VCC-affiliated companies was in default as of the date the Pledge Agreement was executed. *See* SAC ¶ 32. As such, the VCC has failed to establish that Plains breached the Pledge Agreement by executing the Warrants.

---

[7] In full, this clause, the validity of which VCC does not dispute, provides:

THIS AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND THE SAME MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

VCC also alleges that Plains breached the Pledge Agreement by failing "to continue the financial accommodations evidence by each Note." SAC ¶ 51. However, even if this provision amounted to more than a mere recital of the parties' mutual understanding that Plains would continue the financial accommodations evidenced by each Note and actually imposed an independent contractual obligation on Plains to honor its financial commitments to the VCC-affiliated companies under the Notes in spite of the fact that one or more of the companies had defaulted on their obligations under the Notes,[8] nowhere in its Complaint does VCC detail the financial accommodations that Plains agreed to continue under the various Notes, nor how specifically Plains failed to continue these accommodations. Absent such details, the Court cannot reasonably infer that Plains failed "to continue the financial accommodations evidenced by each Note" or breached the Pledge Agreement.

C.      *VCC's Fraud Claim against Plains*

Plains also moves to dismiss VCC's fraud claim. In its Complaint, VCC alleges that Plains fraudulently induced it to enter into the Pledge Agreement by making the following knowing misrepresentations upon which VCC claims it justifiably relied: (1) that Plains only needed the Warrants for "internal purposes" and had no intention of actually executing the Warrants; and (2) "that Plains would continue to lend to the other affiliated Vulcan companies, continue to honor the rest of the other Vulcan company debt agreements . . . , [and] continue to honor the Plains bankers' personal promises to VCC on access to capital." SAC ¶¶ 31, 55, 57.

Plains moves to dismiss VCC's fraud claim on several grounds. First, Plains claims that VCC's

---

[8] As stated previously, this is by no means clear from the terms of the Pledge Agreement. *See supra* note 2.

claim must be dismissed because VCC has failed to explain how Plains' statement concerning the execution of the Warrants was false. Plains Br. at 12. Second, Plains argues that VCC's fraud claim fails because VCC cannot establish that, as a matter of law, it justifiably relied on VCC's representations in agreeing to sign the Pledge Agreement. *Id.* at 12–14; Reply Br. 7–9. Third, Plains contends that dismissal is required because VCC's fraud claim is duplicative of its breach of contract claim and relatedly, because under New York law, "a fraud claim does not lie based upon the mere allegation that a party to a contract never intended to perform." Plains Br. 14–15; Reply Br. 7. Fourth, Plains maintains that VCC's fraud claim cannot survive a motion to dismiss because, taken as a whole, VCC's allegations in the Complaint fail to give rise to a "strong inference" of fraudulent intent. *Id.* at 15–17. The Court need not address all of Plains' grounds for dismissal, however, for as explained below, the Court agrees with Plains that VCC cannot establish that it justifiably relied on Plains' representations.

At the outset, the Court observes that it is not clear whether VCC's fraud claim is properly governed by New York or Texas law. However, because there does not appear to be any conflict between the two states' laws with respect to the principal requirements for proving common law fraud, the Court applies forum or Texas law. *SNS Bank, N.V. v. Citibank, N.A.*, 777 N.Y.S.2d 62 App. Div. 2004); *Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219 (App. Div. 1993).

Under Texas law, a plaintiff asserting a claim for fraud must do more than show that he actually relied on another party's material misrepresentations of material fact; he or she must also show that such reliance was reasonable or justifiable. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998) (stating that justifiable reliance is an element of fraud under Texas law). In determining whether a party's reliance was justifiable, courts consider whether,

"'given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud[,] it is extremely unlikely that there is actual reliance on the plaintiff's part.'" *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (quoting *Haralson v. E.F. Hutton Group, Inc.*, 919 F.2d 1014, 1026 (5th Cir.1990)).

In this case, VCC claims to have relied on Plains' oral representation that it only needed the Warrants for "internal purposes" and had no intention of actually executing the Warrants in agreeing to enter into the Pledge Agreement. SAC ¶¶ 31, 57. However, this representation was directly contradicted by the unambiguous terms of the written Pledge Agreement, which expressly provided Plains a security interest and lien in the Warrants and the power to execute this interest in the Warrants upon any default under the Loan Documents. Pledge Agreement ¶¶ 1, 4–5. As such, the Court concludes that VCC's reliance on this representation was unjustifiable. *See DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003) ("[R]eliance upon an oral representation that is directly contradicted by the express unambiguous terms of a written agreement between the parties is not justifiable as a matter of law."); *see also Playboy Enters., Inc. v. Editorial Caballero, S.A. de C.V.*, 202 S.W.3d 250, 258 (Tex. App.—Corpus Christi 2006).

Likewise, the Court finds that it was unreasonable for VCC and its President Ford F. Graham to rely on Plains' oral promises to continue to lend to VCC and the VCC-affiliated companies in the future, because Graham was an experienced investor and because there is no suggestion that the parties ever discussed the terms of these loans, let alone reduced them to writing. *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 358 (5th Cir. 1996) (holding that fraud claim failed as matter of law for want of justifiable reliance when sophisticated businessman claimed to have

relied upon bank's oral representations that pending commitment letter would issue in two to five days); *In re Absolute Resource Corp.*, 76 F. Supp. 2d 723, 731–32 (N.D. Tex. 1999) (concluding that plaintiff, a sophisticated businessman, could not have justifiably relied as matter of law on bank's oral promise to provide a $5 million loan).

Finally, the Court holds that it was unreasonable for Graham to enter into the Pledge Agreement on behalf of VCC based on Plains' promise that it would honor its financial commitments to the VCC-affiliated companies under the Notes, because according to VCC's Complaint, Graham knew that at least some of the VCC-affiliated companies were in default or likely to default on their respective Notes, and thus that Plains had the contractual right to repudiate its financial commitments to those companies at any time. SAC ¶ 32; *Grant Thornton LLP*, 314 S.W.3d at 923 (holding that a party may not justifiably rely on another's representation if there are "red flags" indicating that such reliance is not warranted).

D.    *VCC's Constructive Fraud in Contract Claim against Plains*

Closely related to VCC's fraud claim is its claim for constructive fraud in contract, which Plains also moves to dismiss. In order to establish constructive fraud in contract, VCC must establish the same elements as a claim for fraud, except that a fiduciary or confidential relationship between the parties is substituted for the element of intent. *Burrell v. State Farm & Cas. Co.*, 226 F. Supp. 2d 427, 438 (S.D.N.Y. 2002). As discussed above, however, VCC cannot establish the essential element of justifiable reliance. Accordingly, VCC's constructive fraud in contract claim must be dismissed.

E.    *VCC's Negligent Misrepresentation Claim against Plains*

VCC's negligent misrepresentation claim against Plains is premised on the same alleged misrepresentations that undergird its fraud claim and is also the subject of Plains' motion to dismiss.

SAC ¶¶ 63–66. "A claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007). As discussed above, however, VCC cannot show that, as a matter of law, it reasonably relied on these misrepresentations. Thus, VCC cannot maintain a cause of action for negligent misrepresentation against Plains under New York law.[9] *See id.*

F.     *VCC's Breach of the Duty of Good Faith and Fair Dealing Claim against Plains*

VCC also attempts to assert a claim against Plains under Section 1.304 of the Texas Business and Commerce Code for breach of the duty of good faith and fair dealing. SAC ¶¶ 85–86. As Plains accurately observes, however, "[t]his section does not support an independent cause of action for failure to perform in good faith." Plains Br. 24 (quoting Tex. Bus. & Comm. Code § 1.304 cmt. 1); *accord Apache Corp. v. Dynegy Midstream Servs., Ltd. Partnership*, 214 S.W.3d 554, 563 (Tex. App.—Houston [14th Dist.] 2006) *aff'd in part, rev'd in part*, 294 S.W.3d 164 (Tex. 2009) ("The failure to act in good faith under the UCC, however, does not state an independent cause of action because the duty of good faith and fair dealing is aimed at making effective the agreement's promises."). As such, VCC's breach of good faith and fair dealing claim against Plains must be

---

[9] Despite clearly indicating in its Complaint that its negligent misrepresentation claim was being asserted under New York law, VCC argues in its Response that it has also established its negligent misrepresentation claim under Texas law. Resp. Br. 21. However, even were the Court to indulge VCC's efforts to replead its negligent misrepresentation claim in its Response, VCC's claim would still fail because Texas law similarly requires plaintiffs to establish justifiable reliance in order to state a claim for negligent misrepresentation. *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)(stating that justifiable reliance is an element of a claim for negligent misrepresentation).

dismissed.

G.     *VCC's Conversion Claim against Plains*

VCC concedes its conversion claim against Plains is time barred under Texas law. Resp. Br.

3. Accordingly, VCC's conversion claim is hereby dismissed.

H.     *VCC's Breach of Fiduciary Duty Claim Against Plains and Miller*

Both Plains and Miller move to dismiss VCC's breach of fiduciary claim. A detailed discussion

of this claim is not required, however, because VCC concedes in its responses to Plains and Miller's

motions to dismiss that it cannot plead sufficient facts to support a claim for breach of fiduciary duty.

*See* docs. 46, Resp. Br. 3; 71, Resp. Br. 3. Accordingly, VCC's claim for breach of fiduciary duty

against Plains and Miller is hereby dismissed.

I.     *VCC's Concert of Action Claim against Plains and Miller*

Also the target of Plains and Miller's motions to dismiss is VCC's "concert of action" claim,

which seeks to hold both defendants liable for entering into an agreement to defraud VCC and

interfere with its rights under the Warrants. SAC ¶¶ 71–72. Both Plains and Miller request that the

Court dismiss VCC's concert of action claim, because no such cause of action exists under New York

law. Plains Br. 23; Miller Br. 8. Furthermore, according to Miller, even liberally construing Vulcan's

Complaint as asserting a cause of action for civil conspiracy rather than concert of action, VCC's

claim still fails because Vulcan has failed to state sufficient facts to satisfy the elements of a civil

conspiracy under New York law. Miller Br. 9. For the reasons that follow, the Court agrees with the

defendants.

"Under New York law, there is no independent tort for [civil] conspiracy." *Eaves v. Designs*

*for Fin., Inc.*, 785 F.Supp.2d 229, 257 (S.D.N.Y. 2011); *accord McCall v. Chesapeake Energy Corp.*,

509 Fed.Appx. 62, 65 (2d Cir. 2013) (summary order) ("There is no independent tort of conspiracy in New York."). "As a result, a claim for civil conspiracy may only lie if it is connected to a separate underlying tort." *Legal Consulting Grp. v. DiJoseph*, No. 13 CIV. 6867 KPF, 2014 WL 3891358, at *14 (S.D.N.Y. Aug. 8, 2014).

"To establish a claim of civil conspiracy, a plaintiff must demonstrate the underlying tort, plus the following four elements: [i] an agreement between two or more parties; [ii] an overt act in furtherance of the agreement; [iii] the parties' intentional participation in the furtherance of a plan or purpose; and, [iv] resulting damage or injury." *Meisel v. Grunberg*, 651 F.Supp.2d 98, 119 (S.D.N.Y. 2009); *see also Eaves*, 785 F.Supp.2d at 257. In other words, the plaintiff "must establish facts which 'support an inference that defendants knowingly agreed to cooperate in a fraudulent scheme, or shared a perfidious purpose.'" *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F.Supp.2d 363, 386 (S.D.N.Y. 2010) (quoting *Snyder v. Puente De Brooklyn Realty Corp.*, 746 N.Y.S.2d 517(App. Div. 2002)).

In this case, even assuming that VCC simply mislabeled its civil conspiracy claim as a claim for concert of action, its claim fails because as discussed previously, the only underlying tort claim to which VCC maintains its civil conspiracy claim is tied—its fraud claim—fails as a matter of law. *See DiJoseph*, 2014 WL 3891358, at *14. Accordingly, VCC's concert of action/civil conspiracy claim must be dismissed.[10]

---

[10] In its Response, VCC argues that it should be allowed to plead and prove the conspiracy under Texas law despite the fact that in its Complaint, Plaintiff clearly asserts its claim under New York law. Resp. Br. 22. Even allowing as much, however, VCC's Complaint still fails to state a claim for civil conspiracy, because as is the case under New York law, a claim for civil conspiracy in Texas must be tied to an underlying tort—in this case fraud—and VCC's fraud claim fails as matter of law. *See Krames v. Bohannon Holman, LLC*, No. 3:06-CV-2370-O, 2009 WL 762205, at *9 ("Plaintiffs' failure to state a

J.     *VCC's Accounting Claim against Plains and Miller*

Finally, both Plains and Miller urge the Court to dismiss its claim for an accounting. In its Complaint, VCC asserts that Plains and Miller should be required to account for the Warrants, because a fiduciary relationship existed between the parties and VCC entrusted Defendants with the Warrants. SAC ¶¶ 74–75. However, VCC appears to have abandoned its accounting claims by not responding to either Defendant's arguments for dismissal. *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *see also Scales v. Slater*, 181 F.3d 703, 708 n.5 (5th Cir. 1999) (finding that plaintiff abandoned claim by failing to contest defendant's arguments for dismissal of that claim).

In any case, VCC's accounting claims must be dismissed because VCC has failed to plead sufficient facts to suggest that its relationship with the defendants was of sufficient trust and confidence to create a fiduciary duty. *See Stadt v. Fox News Network LLC,* 719 F.Supp.2d 312, 323 (S.D.N.Y. 2010) ("[Plaintiff's] . . . request for an accounting fail[s] because the Complaint does not allege adequate facts to suggest that the parties were in a relationship of sufficient trust and confidence o create a fiduciary duty or a confidential relationship."). By law, no fiduciary relationship exists between creditors and debtors. *In re Sharp Intern. Corp.*, 403 F.3d 43, 52, n.2 (2d Cir. 2005); *Bank Leumi Trust Co. v. Block 3102 Corp.*, 580 N.Y.S.2d 299, 301 (App. Div. 1992) (holding that "the legal relationship between a borrower and a bank . . . does not create a fiduciary relationship"); *Buffalo & Erie Cty. Regional Dev. Corp. v. World Auto Parts, Inc.*, 761 N.Y.S.2d 893, 894 (App. Div. 2003) (concluding that no fiduciary relationship existed between plaintiff and bank which sold collateral upon default of security agreement). Thus, the fact that VCC agreed to guarantee the

---

claim for fraud, which is the offense underlying their conspiracy claim, necessitates that Plaintiffs' conspiracy claim should similarly be dismissed.").

VCC-affiliated companies' obligations to Plains does not give rise to a fiduciary relationship between VCC and Plains. Moreover, the sole fact that VCC's President Ford F. Graham "has a long history of dealings" with Plains is insufficient to give rise to a fiduciary relationship between the two companies. *See World Wrestling Entertainment, Inc. v. JAKKS Pac. Inc.*, 530 F.Supp.2d 486, 503–05 (S.D.N.Y. 2007) (holding that no fiduciary relationship existed between two companies despite pre-existing contractual relationship); *Argent Elec. Inc. v. Cooper Lighting, Inc.*, No. 03-CV-9794 (RMB), 2005 WL 2105591, at *9 (S.D.N.Y. Aug. 31, 2005) (finding fact that plaintiff and defendant "worked together" insufficient to establish fiduciary relationship). Finally, there are no facts in VCC's Complaint to suggest that a fiduciary relationship existed between Miller and VCC.

## IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Plains' Motion to Dismiss (doc. 32) as to VCC's claims for breach of contract, fraud, constructive fraud in contract, negligent misrepresentation, breach of the duty of good faith and fair dealing, conversion, breach of fiduciary duty, concert of action/civil conspiracy, and accounting, but **DENIES** Plains' Motion to Dismiss as to VCC's claim for rescission based on duress. The Court **GRANTS** Miller's Motion to Dismiss (doc. 66) in its entirety.

Normally, courts will afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears certain that such repleading would be futile. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) ("[A] court ordinarily should not dismiss the complaint except after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."). Since this Order is the Court's first review of VCC's allegations, the Court concludes that VCC

should be given the opportunity to replead its claims for breach of contract, fraud, constructive fraud in contract, negligent misrepresentation, and concert of action/civil conspiracy in order to overcome the deficiencies noted herein. However, the Court concludes that it would be futile to allow VCC to replead its claims for breach of the duty of good faith and fair dealing, conversion, breach of fiduciary duty, and accounting, because all of these claims have either been voluntarily conceded or abandoned by VCC or rest on an invalid theory of liability.

If VCC is able to replead and overcome the grounds for dismissal stated herein, it should do so by no later than thirty (30) days from the date of this Order. Further, any repleading shall be accompanied by a synopsis of no more than ten (10) pages, explaining how the amendments overcome the grounds stated for dismissal in this Order. Should VCC replead, Defendants are hereby granted leave to file responses to VCC's synopsis. Any response shall not exceed ten (10) pages and must be filed within fourteen (14) calender days of the repleading. No further briefing will be permitted.

SO ORDERED.

SIGNED: January 22, 2015.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE